## SOVEREIGN CAMP W. O. W., v. CAMERON.
### No. 7569.

Court of Civil Appeals of Texas. Austin.

July 1, 1931.

Rehearing Denied Aug. 12, 1931.

Smith & Neill, of San Angelo, for appellant.

D. I. Durham and R. G. Hughes, both of San Angelo, for appellee.

REINHARDT, Special C. J.

On March 10, 1930, appellee filed her suit in the district court of Tom Green county, Tex., against appellant on a beneficiary certificate issued her deceased husband, Edwin I. Cameron, wherein she was named beneficiary. The case was tried before the court without a jury on July 11, 1930, and the judgment was rendered for appellee in the sum of $1,100 with legal interest from February, 1929, and costs. Notice of appeal was promptly given. Findings of fact and conclusions of law were filed in due time, as was a supersedeas bond and assignments of error, so that the case is now before this court for review.

It is alleged that at the time of his death the deceased had fully paid all the dues and assessments on the certificate, and all provisions in the certificate had been complied with, and the certificate was in full force and effect. This is denied in the answer. The appellant pleaded that the deceased had allowed his certificate to lapse and become null and void under the laws of the order by reason of his nonpayment of the regular dues and assessments for June and July, 1928, before the expiration of said month of July, and that he had not been reinstated under the laws of the order. The appellee in reply pleaded waiver of forfeiture for nonpayment of dues and assessments within the prescribed time by accepting payment of the same unconditionally after that time.

The appellant's society is a fraternal beneficiary association having a lodge system with a representative form of government incorporated under the laws of the state of Nebraska with its home office in Omaha, Neb. Edwin I. Cameron, deceased, and husband of appellee made application for membership in the order on March 10, 1928. On March 26, 1928, the benefit certificate was duly issued to the deceased in the sum of $1,000, wherein appellee was named beneficiary. The certificate contained an agreement of the insured to make prompt payment of all dues and assessments and to comply with and conform to all the laws, rules, and regulations of the order. The deceased did not pay his installments for June and July, 1928, and he became suspended after July 31, 1928. The report of the nonpayment of his dues and his consequent suspension was received at the home office of the appellant on August 16, 1928. On August 29, 1928, the insured, Edwin I. Cameron, became sick and was carried to a hospital, where he died September 1st. On August 30, 1928, before he died a Mr. Bell paid the clerk of the local Woodmen camp installments for the months of June, July, August, and September. On September 14, 1928, the dues which were paid on August 30 were received at the home office of the appellant. On October 16, 1928, the report of the death of Edwin I. Cameron was received at the home office of the appellant and on February 9, 1929, the appellant declined to pay the claim of appellee and sent the appellee a check covering the dues which it received on September 14, 1928. The policy upon which the suit was brought provided, among other things pertinent to the issues involved, that the Sovereign Camp of the Woodmen of the World in consideration of certain warranties contained in the application and the further consideration of monthly payments would pay to the beneficiary, Anna M. Cameron, upon the death of the insured $1,000, and also $100 for the erection of a monument; that the certificate is issued and accepted subject to all the conditions set forth therein, and on the reverse side thereof and the provisions of the constitution, laws and by-laws of the association; that the articles of incorporation, and the constitution, laws, and by-laws of the association and all amendments to each thereof which may be made thereafter, the application for membership and medical examination signed by the appellant therein named as member as approved by the Sovereign Physician of the association and the certificate shall constitute the agreement between the association and the member and that, if payments required by the constitution, laws, and by-laws of the association are not paid by the member, the certificate shall be null and void, and, should the certificate become void for any cause, acceptance of, any payment from or for the member or other act by any camp officer or member of the association thereafter shall not operate as an estoppel or as a waiver

of the terms of the contract. The application signed by the deceased, Edwin I. Cameron, contained, among other provisions pertinent to the issues involved in this case, the following:

"I hereby certify, agree and warrant that * * * my being suspended or expelled from, or voluntarily severing my connection with, the Society, or any failure on my part to comply with the laws of the Society now in force or hereafter adopted, shall make my beneficiary certificate void, and all rights of any person or persons thereunder shall be forfeited.

"I agree to make all payments for which I may become liable while a member of the Society as required by its Constitution, Laws and By-Laws, as now in force or which may be hereafter adopted, and at the time and in such manner and amount as may be provided by said Laws and if I do not make said payments at the time and for the amount required and provided in the Constitution, Laws and By-Laws of the Society, the certificate issued upon this application shall be null and void and all payments made by me thereon shall be retained by the Society."

The constitution, laws and by-laws of the Sovereign Camp Woodmen of the World, pertinent to the issues involved, are as follows:

"Sec. 63 (a) Every member of this Association shall pay to the Clerk of his Camp one annual assessment or one monthly installment of assessment as required by these laws or by the provision of his certificate, which shall be credited to and known as the Sovereign Camp Fund, and he shall also pay such camp dues as may be required by the By-Laws of his camp. He shall pay any additional dues or other payments which may be legally called.

"(b) If he fails to make any payments on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the Association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension.

"Such person, if in good health, may thereafter make a new contract with the Association, upon the same terms and conditions, by complying strictly with the provisions of these laws, contained in Sections 65, 66 and 67. See 26 (g).

"Sec. 64. A person who becomes suspended for nonpayment of assessments or installments of assessment is not entitled to any benefits of this Association, nor shall he receive the pass word or participate in any of the business or social proceedings of the Camp to which he had belonged.

"Sec. 65. * * * Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such assessments when so paid after he has become suspended for non-payment of assessments shall be received and retained without waiving any of the provisions of this section or of these Laws until such time as the Sovereign Clerk shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever.

"Sec. 68 (a) The retention by the Association of any installment of assessment paid by or for any person after he has become suspended in order to again make him a member, shall not constitute a waiver of any of the provisions of this Constitution, Laws and By-Laws, or an estoppel upon the Association.

"(b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment of assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void.

"Sec. 82 (a) No officer, employee or agent of the Sovereign Camp, or of any Camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this Constitution or these laws, nor shall any custom on the part of any Camp or any number of Camps—with or without the knowledge of any Sovereign Officer— have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the Constitution and Laws, then in force or thereafter enacted, nor shall the knowledge or act of any officer or employee of this Association cause a Waiver of the provisions of these laws by the Association or an estoppel of this Association.

"(b) The Constitution and Laws of the Association now in force, or which may here-

after be enacted, the application and beneficiary certificate of membership shall constitute the contract between this Association and the member."

■ There is no question but that under the facts of this case the policy of insurance sued upon became forfeited, null, and void on August 1, 1928, by reason of the fact that the insured failed to pay his monthly installments for the months of June and July. Then the only question remaining in this case is whether or not the payment of the installments for June, July, August, and September made by Bell on August 30, 1928, while the insured was sick, constituted a waiver of forfeiture or constituted a new contract upon which the beneficiary could recover. Under the facts of this case, and under the terms of the policy, the local camp clerk had no right or authority to waive anything. He could bind the company only within the scope of his authority, and his authority extended merely to the collection of the monthly installments. He certainly could not waive the forfeiture without a full knowledge of the existing facts, and there is nothing in the record to show that at the time he accepted the installments on August 30, 1928, he knew that the insured was sick, and, even if he did know it, such knowledge was not binding upon the company, for the reason that the same is contrary to the terms of the policy, and the agent cannot bind the principal except within the scope of his employment.

■■ It certainly cannot be said that the Sovereign Clerk at the home office waived the forfeiture for the reason that he could not waive such forfeiture without a full knowledge of the facts. He did not know that the insured had become suspended until August 16, 1928, and on August 29, 1928, when the insured became sick, the policy was forfeited, null, and void. He did not know that the insured became sick on August 29, 1928. He did not know that any attempt had been made by the insured to pay his dues until September 14, 1928, when the same had been received at the home office, and at the time the insured was already dead. Under the terms of the policy, there was a condition precedent to the reinstatement or the making of a new contract that the insured at the time of making his delinquent payments must be in good health, and it is shown that he became sick on August 29, 1928, and the installments were paid by Bell on the following day. The insurer could not waive the forfeiture without a full knowledge of the facts, and it is well settled that "forfeiture for default in payment of a premium is not waived by acceptance of the premium or by other acts of insurer after the death of the insured without knowledge of his death." 37 C. J. 528; Kan. City Life Ins. Co. v. Elmore (Tex. Civ. App.) 226 S. W. 709; Joyce on Insurance Para-

graph 1374, Vol. 3, Page 2543; Horstmann v. Capital Life Ins. Co., 194 Mo. App. 434, 184 S. W. 1164; Life Ins. Co. v. McAfee (Ky.) 90 S. W. 216; Wright v. Ins. Co., 204 Mo. App. 124, 221 S. W. 383.

■ If there was no waiver of the forfeiture, then the remaining question is whether or not the payment of the installments for June, July, August, and September made by Bell on August 30, 1928, and the receiving of same by the Sovereign Clerk after the death of the deceased constituted a new contract upon which the beneficiary could recover. Under the terms of the policy, a new contract can be entered into any time within three months, provided all past-due installments are paid, but when the same are paid there is an express warranty by the terms of the policy to the effect that the insured is in good health at the time his installments are paid, and that he will remain in good health for a period of thirty days thereafter. This being a part of the insurance contract, and being an express warranty, the contract would not be binding if the warranty was untrue, and it is not disputed that, at the time the installments for June, July, August, and September were made, the insured was then sick with appendicitis, from which he died on September 1st.

The appellee in this case relies very strongly upon the case of Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876, but the facts in that case are considerably different from the facts in this case, and the terms of the policy are also different. Under the terms of the policy in the Bailey Case, a suspended member had the right to again become a member by paying all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, provided he was in good health at the time, and after the expiration of ten days, and within three months from the date of suspension, he could become reinstated by paying to the clerk of his camp all arrearages and dues, and also deliver a written statement and warranty that he was in good health at the time and would so continue for thirty days thereafter. It was also shown in that case that for some time previously the insured had been allowed to pay his dues after the prescribed time, but in this case the policy provides that he may again become a member by paying all arrearages and dues, but that such payment, whether paid by him or for him, constituted a warranty to the effect that he was in good health at such time, and would so continue for thirty days thereafter, and that the acceptance of such dues by the clerk would not constitute a waiver or an estoppel on the part of the Sovereign Camp.

The views expressed in this opinion are not in conflict with the opinion of the Special

Supreme Court in the Bailey Case. It is held in the Bailey Case that, after the ten-day period, the insurer did not have to accept the money without the written warranty provided in the by-laws concerning good health, and, when it did accept the money without demanding and receiving the written warranty, it waived the requirement of good health, and thereby waived the forfeiture. Under the contract sued upon in the present case, it is specifically provided that "whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment, in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such assessments when so paid, after he has become suspended for non-payment of assessments, shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Sovereign Clerk shall have received actual, not constructive or imputed, knowledge that the person was in good health when he attempted to again become a member. Provided that the receipt and retention of payment of such installments of assessments, in case such person is not in good health, shall not make such person a member, or entitle him or his beneficiary, or beneficiaries, to any rights whatever."

Under the contract involved in this suit, it is further specifically provided: "Any attempt by a suspended person to again become a member, shall not be effective for that purpose, unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installments of assessments shall be a warranty that such person is at the time in good health, and that if the warranty is not true, the certificate shall be null and void."

Under the laws of the order quoted above, which became a part of the contract sued upon, it was not incumbent upon the clerk of the local camp to demand a written warranty of good health, or even to inquire as to the condition of the insured's health at the time the delinquent installments were paid to him, and, consequently, the acceptance of such installments by the clerk of the local camp did not make or constitute a waiver of the previous forfeiture.

The payment of the installments was in itself a representation and warranty that the insured was at that time in good health, and the clerk had the right to rely upon such warranty. The facts are, however, that instead of the insured being in good health at the time the delinquent installments were

paid, he was then dangerously ill, and died the second day thereafter, consequently the certificate sued upon was forfeited, null, and void, and the payment made by Bell of the past-due installments did not reinstate the insured as a member of the Order.

It might be said that, had not the insured become sick and died, the insurer would have accepted the installments and continued the policy in force. On the other hand, it could just as easily be said that, had not the insured become seriously sick at a time when his policy was forfeited, Mr. Bell would not have troubled himself to pay Cameron's installments.

For the above reasons, the judgment is reversed, and judgment is here entered in favor of the appellant, the appellee to pay costs of the trial court and of this court.

Reversed and rendered.

### On Motion for Rehearing.

WILCOX, Special A. J.

Appellee's attorneys have filed herein a motion for rehearing, in which it is very strenuously contended that the opinion rendered in this case is in conflict with the opinion in the Bailey Case, 116 Tex. 160, 286 S. W. 456, and 288 S. W. 115, 47 A. L. R. 876. The writer does not think any such conflict exists. Under the contract of insurance in the Bailey Case, the insured had no absolute right to pay the past-due installments, without at the same time furnishing the written warranty of good health, and the local clerk did not have to accept such past-due installments without being furnished such written warranty. Under the contract sued upon in this case, it is specifically provided "any attempt by a suspended person to again become a member, shall not be effective for that purpose, unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installments of assessments shall be a warranty that such person is at the time in good health, and that if the warranty is not true, the certificate shall be null and void."

It is held in the Bailey Case, 116 Tex. 169, 288 S. W. 115, 47 A. L. R. 876, that, after the certificate became forfeited, the holder was no longer a member, and "he was no longer bound by the conditions of his certificate, except in so far as his right to enforce reinstatement was concerned." Under this holding Cameron, even though he had been suspended and his certificate of insurance had become forfeited, was bound by the conditions and provisions of his contract in reference to his right to be reinstated as a member and to reinstate his insurance. In addition to the provisions of the contract quoted above, there are further provisions which are quoted in full in the original opinion rendered in this cause, which further provide that the

payment of unpaid installments after the ten-day period, and within the three months period, shall be held to warrant that the insured is in good health at the time and will remain in good health for thirty days after such attempt to again become a member, and that such assessments, when so paid, shall be received and retained without waiving any of the provisions of the contract until the Sovereign Clerk shall have received actual, and not constructive or imputed, knowledge that the person was not in good health when he attempted to again become a member.

As stated in the original opinion, under these provisions of the contract, the payment of the past-due installments was in itself an express warranty that at the time Cameron was in good health. At the time these installments were paid, whether paid by Cameron himself or by some one else for him, he was charged with notice of, and bound by the above-mentioned provisions of the contract in reference to reinstatement, and the acceptance of the installments by the clerk of the local camp was not a waiver of the previous forfeiture. Under these provisions of the contract, it was not incumbent upon the local clerk to ascertain whether or not Cameron was in good health at the time, and even though the clerk might have known of Cameron's illness, still the only authority the local clerk had was to receive and remit the money, and his receipt thereof did not constitute a waiver of the previous forfeiture.

The motion for rehearing is therefore overruled.

Overruled.