## MODERN WOODMEN OF AMERICA v. HARPER.

### No. 8988.

Court of Civil Appeals of Texas. San Antonio.

Feb. 1, 1933.

Rehearing Denied March 15, 1933.

Templeton, Brooks, Napier & Brown, of San Antonio, and George G. Perrin and George H. McDonald, both of Rock Island, Ill., for appellant.

H. D. Barrow and A. N. Steinle, both of Jourdanton, for appellee.

SMITH, Justice.

For twenty-nine years Peter H. Harper was a faithful member of the Modern Woodmen of America, a fraternal benefit society, promptly paying his monthly dues thereto before the end of each month, as required by its by-laws, except for the months of July, 1930 (which he paid on August 21), and December, 1930, and January, 1931 (which he paid on February 10, together with future dues for February and March). In both instances of delinquency the society accepted the delayed payments without protest or admonition against future delinquencies; and the unsuspecting member went on his way in the serene assurance that he was in good standing with his society and that in case of his death his wife would receive the benefits he had so providently and faithfully provided for her.

On March 13, 1931, during a period for which he had paid his dues in advance, Harper died, at the age of sixty-eight years. He had been in ill health for twenty years, and particularly since 1928, during all of which period the society had regularly accepted and appropriated his assessments, regardless of whether tender thereof was timely or tardy.

The society retained the assessments for December, 1930, January, February, and March, 1931, paid by Harper on February 10, until this suit was brought in September, 1931, when, offering to refund those payments to Harper's widow and the beneficiary in his certificate, it sought to defeat payment of the insurance because Harper had been delinquent in the payment of his December, 1930, and January, 1931, assessments. The trial court rejected this defense, directed a verdict in favor of the widow, and rendered judgment in her favor for the amount of the so-called "certificate of benefit" issued by the society to Harper. The society has appealed.

It is provided in the society's by-laws that the member shall be automatically suspend-

ed and the certificate become null and void if any monthly assessment thereon is not paid to the local clerk of the society on or before the last day of the calendar month in which it is due; that at any time within ninety days the member may be reinstated by the payment of delinquent assessments, if he is then in sound health, and so warrants himself to be; that the society shall not be bound by any act or knowledge of its local clerks; that " * * * payment by said member and the acceptance and retention thereof by the society of assessments and dues on account of any benefit certificate or rider after same has ceased to be in force shall not have the effect of continuing said benefit certificate or rider in force, but the society shall return such assessments and dues to the member, if living, and if dead, to the beneficiary or beneficiaries, upon their written demand therefor." Section 57 of the by-laws. And in section 64 it is provided that: " * * * Whenever assessments or dues are paid by or for a suspended member for the purpose of reinstatement, said member shall, by such payment, be held to warrant that he is in sound health * * * and to contract that such assessments or dues, when so paid, after his suspension for nonpayment, shall be received and retained without waiving any of the provisions of this section until such time as the head clerk or the board of directors shall have knowledge that the member was not in sound health when he attempted to reinstate * * *, provided, however, that the receipt and retention of such payment, in case the suspended member is not in sound health, or is engaged in any prohibited occupation, shall not reinstate said member or entitle him or his beneficiary or beneficiaries to any rights under his benefit certificate; and provided, further, that such payment made for the purpose of reinstatement, either before or after death, shall not constitute a waiver of any provision of these by-laws."

The record shows that Harper died on March 13, 1931, and proof of his death was made to the society, through its chief officials, on March 24, 1931. This proof was accompanied by full and detailed information concerning the condition of the decedent's health during the three years preceding his death, and by this means knowledge of the decedent's unsound health, at the time of his attempts at reinstatement, was brought home to the society's head clerk and its directors. The society did not thereupon repudiate its obligation to the beneficiary or reject the attempted reinstatement of the member, by refunding or offering to refund the tardily paid assessments, or by any other means, but retained that fund until the ensuing September, when, in answering to this suit, it tendered the amount to the decedent's widow and the beneficiary in said certificate.

Undoubtedly the knowledge imparted with the proofs of Harper's death fully satisfied the condition in the by-laws that waiver of the provision against reinstatement of members not then in sound health would not operate to bind the society "until such time as the head clerk or the board of directors shall have knowledge that the member was not in sound health when he attempted to reinstate," etc. When put to an election by this knowledge, however, the society did not hasten to repudiate the "attempted reinstatement," by promptly notifying the beneficiary and refunding the assessments it had received and pocketed weeks before, as was its duty not only in good conscience, but under the provisions of section 64 of its by-laws. On the contrary, so far as the record shows, it took refuge in silence until sued on its obligation months later, and, holding tight to funds which it now contends belonged to the widow of its lifelong member, it set about to defeat its fundamental obligation as a "fraternal beneficial society."

Appellant contends that under the provision in section 57 of its by-laws it was not incumbent upon it to refund the assessments until appellee made written demand therefor. It is true that section embraces such a provision, but it is obvious from its language that it applies only in cases where there is no question of the futility of the payment of those assessments, since to demand their refund would commit the member or his beneficiary to a rescission of the contract. But, if it should be determined that that provision was intended to apply in every case, it should not be enforced in the presence of the provision in section 64 of the by-laws to the effect that no waiver can be charged to appellant until (and therefore by implication will become effective when) its head clerk or board of directors have knowledge of the unsound health of a member seeking reinstatement.

We are of the opinion that under the terms of its by-laws as applied to the facts stated, the society should be held to have waived the provision urged in defense of this suit. The society seemed to employ every artifice of language to entrap the unwary dues-payer in event of his least delinquency, and it will not be heard to complain if its forfeiture provisions are construed liberally in favor of those ensnared in the meshes of those provisions.

The judgment is affirmed.

MURRAY, J., not sitting.