SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. ANGELA G. DE MORAIDA.

No. 6993.   Decided February 16, 1938.
Rehearing overruled March 30, 1938.
(113 S. W., 2d Series, 177.)

*I. W. Keys,* of Corpus Christi, for plaintiff in error.

Where the provisions of the certificate sued on, the constitution and the by-laws of the association specifically provide that payments of past due installment and assessments constituted a representation that insured was in good health, the acceptance and retention of past due premiums and assessments from the deceased by the financial secretary of the local camp, while insured was sick, did not constitute a waiver of previous forfeiture. Neither did it reinstate the assured nor estop the association from denying liability. Kansas City Life Ins. Co. v. Elmore, 226 S. W. 709; 37 C. J. 528; 3 Joyce on Ins., 2543.

*R. T. Pritchett,* of Corpus Christi, for defendant in error.

The custom of members of the local camp of paying their monthly dues after the expiration of the month in which they became due, and the voluntary acceptance and the unconditional retention, of some eighteen or twenty payments made after same were past due, by the association, and without protest or objection, prior to the death of the insured, constituted a waiver of the successive forfeitures. Supreme Lodge K. of P. v. Hooper, 282 S. W. 867; 5 Cooley's Briefs on Ins., 4388; 4 Joyce on Ins., (2d ed.) Sec. 344.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The above named parties stipulated in the trial court through their respective attorneys that plaintiff in error "is a fraternal, beneficiary association, having a lodge system, and a representative form of government, and ritualistic work; that it is incorporated under the laws of the State of Nebraska, with its home office in Omaha, Nebraska; that it has a lawful permit to do business in the State of Texas, and is organized for the purpose of carrying on its business solely for the mutual benefit of its

members and their beneficiaries and not for profit." It is stipulated also that: " * * * the laws of the State of Nebraska provide among other things as follows: The Constitution and Laws of the Society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the Laws and Constitution of the Society, and the same shall be binding on the Society and each and every member thereof and all beneficiaries or members."

The facts disclose that on April 24, 1931, Moraida, husband of Angela, made application for membership in the local camp of the association located at Corpus Christi; that pursuant thereto the association issued to him its beneficiary certificate in the sum of $1000; that Moraida signed the certificate on July 9, 1931, and upon its being countersigned by Antonio R. Gonzales, the financial secretary of the local camp, became a member of the order on that date. It is unnecessary to set out fully the facts of the case. They are accurately detailed in the opinion of the Court of Civil Appeals which in both its original opinions and upon rehearing affirmed the trial court's judgment in favor of Mrs. Moraida in the sum of $1000. 85 S. W. (2d) 364. It appears that Moraida when he became a member of the association duly paid the assessment and dues for the month of June, 1931, and on July 6, 1931, paid the assessment and dues for that month as required by the contract. The opinion recites the following pertinent facts:

"Thereafter in making such payments, Moraida did not comply with subsection (b) of section 63 of the constitution and laws of the order and pay these monthly payments on or before the last day of the month in which they accrued. Beginning with the payment required before the last day of August, 1931, he paid the same on September 8, 1931, and uniformly thereafter, up to and including the last payment made before his death, which occurred on February 16, 1933, such payments were not paid before the last day of the month in which they accrued, but were each paid in the next month succeeding their accrual. The payments were usually so paid by him around the fifth, sixth, and as late as the eighteenth day of the succeeding month. Without a break in their sequence, eighteen of such belated payments were made, including the two for December, 1932, and January, 1933, which were made respectively for December, 1932, and January 7, 1933, and for January, 1933, on February 4, 1933." It further appears that Moraida became sick about December 25, 1932, and that his illness

was continuous from such time until his death on February 16, next. The assessments were paid to Gonzales, the financial secretary of the local camp, who knew of the insured's illness when he received the past due payments in January and February above referred to. The undisputed testimony discloses that the secretary always permitted members of the local camp to pay their dues monthly for the preceding month any time during the succeeding month prior to the date on which he sent his report to the grand lodge; and that he told Moraida he would be in good standing if he paid his assessments and dues before the secretary sent his report to the association.

Title 78 of the revised civil statutes (1925) relates to the general subject of insurance. Chapter 8 of the title relates particularly to the statutory insurance law of the State governing fraternal benefit societies. Article 4821 of the chapter provides among other things that "any society having a supreme governing or legislative body and subordinate lodges * * * shall be deemed to be operating on the lodge system." Article 4846 of the chapter provides among other things that "the constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any provision of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries or members. * * * ."

The opinions of the Court of Civil Appeals set out many of the provisions of the constitution, laws and by-laws of the association. In economy of both time and space these will not be reproduced in this opinion. Among those particularly pertinent are sections 109, 66 and 65, which provide substantially that the financial secretary of the local camp shall not by acts or waivers, nor shall the camp or any of its officers have authority to waive any of the provisions of the constitution, laws and by-laws of the association or to bind the sovereign camp by any such acts; also that the retention by the association of any installment of assessment paid by or for the member after he has become suspended shall not constitute a waiver of the provisions of the constitution, laws and by-laws or an estoppel upon the association, and that any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and that the payment of any unpaid installment of assessment shall be a warranty that such person is at the time in good health and that if the

warranty is not true the certificate shall be void; and further that when "installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such assessments when so paid after he has become suspended for nonpayment of assessments shall be received and retained without waiving any of the provisions of this section, or of these laws until such time as the Secretary of the Association (not financial secretary of local camp or lodge) shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever."

The parties stipulated also that neither the defendant association nor its secretary nor any of its officers had actual knowledge that the insured had become suspended from membership in the association because of the nonpayment of the assessments levied for the months of December, 1932, and January, 1933, respectively, and that neither the association nor any of its officers had actual knowledge that the insured was not in good health prior to the date of his death.

Mrs. Moraida contends that since the financial secretary of the local camp received and sent the installments of local dues for the months of December and January to the secretary of the association which received and retained same without protest until it received information of Moraida's death, it (the association) thereby waived and became estopped to urge as a defense against liability the provisions of the constitution, laws and by-laws of the association above pointed out; and further that the practice and custom of the local camp in so receiving and forwarding to the association the past due payments led the insured to believe that prompt payment according to the provisions adopted by the association would not be required, and that such practice and custom amounted to the making of a new contract between the parties. The Court of Civil Appeals in affirming the judgment of the trial court in effect so held. The principle ground for its holding is to the effect that knowledge of the financial secretary of the local camp acquired while

engaged in the discharge of his official duties as collector for the camp is as a matter of law imputed to the association.

The holding is in our opinion erroneous in that its effect is to nullify the provisions of the constitution, laws and by-laws of the association obviously adopted by the association and agreed to by its membership for the purpose of guarding against such claims as that asserted in the present case. One of the specific purposes for which they were adopted is to prevent the restoring to membership of a suspended person in ill health when such fact is unknown to the association, and to prevent reinstating him in a manner prohibited by the laws of the association governing membership and its privileges. Finally, the effect of the holding is to nullify and render of no avail the power conferred by the Legislature by Article 4846 authorizing the association to provide that neither the subordinate body nor any of its subordinate officers or members *shall have the power* to waive any of the provisions of its laws, and authorizing it to specifically require that such provisions "shall be binding on the society and each and every member thereof and on all beneficiaries of members." The Legislature was not without power to grant to fraternal benefit societies the authority conferred by Article 4846, and the exercise of such power cannot lawfully be thwarted by judicial decree in the light of the facts herein, stipulated by the parties. Woodmen of the World v. Cameron, (wr. ref.) 41 S. W. (2d) 283. Clearly neither the financial secretary of the local camp nor the camp itself could by their knowledge or acts do that which both were without power to do and which the deceased member had agreed they were without power to do.

Bailey v. Sovereign Camp, 116 Texas 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876, apparently relied upon most strongly by defendant in error is readily distinguishable on the facts, in that the association *with full knowledge* of the forfeiture of the certificate thereafter accepted premiums from the member. Adams v. Lasalle Life Ins. Co., 99 S. W. (2d) 386, is not in point in that the defendant company was not a fraternal benefit society "operating on the lodge system" as provided by Article 4846. Sovereign Camp W. O. W. v. Helm (wr. ref.) 70 S. W. (2d) 213 is referred to as being in conflict with the Cameron case, supra. Its facts are not similar. The association was aware for more than a year that the insured was not in good health, and wrote a letter to assured concerning the matter while still retaining past due payments. Some expressions are used in the opinion in the Helm case and others

that are not in accord with the conclusions reached in the present case. Apparently the effect of Article 4846 and the binding effect of the provisions of the constitution, laws and by-laws of the association adopted pursuant thereto, were overlooked or disregarded. To discuss the cases and expressions referred to would unduly extend this opinion. It suffices to say that to the extent they are not in accord with the conclusions stated herein they are overruled.

See also in this connection Sovereign Camp W. O. W. v. Carroll, 131 Texas 1, 110 S. W. (2d) 556 and Sovereign Camp W. O. W. v. Alston, (wr. ref.) 82 S. W. (2d) 710. The basic fact upon which both cases turn is that which controls this case. As pointed out by Judge MARTIN in the Carroll case, "Insured's policy had lapsed, (for failure to pay his monthly premium on or before the last day of the month) * * * and his fatal illness prevented its unconditional reinstatement."

The judgments of the trial court and Court of Civil Appeals are reversed and set aside and judgment is here rendered for plaintiff in error.

Opinion adopted by the Supreme Court February 16, 1938.

Chief Justice CURETON not sitting.