## SOVEREIGN CAMP, W. O. W., v. THACKER.

### No. 3334.

Court of Civil Appeals of Texas. Beaumont.

June 24, 1938.

Rehearing Denied July 6, 1938.

Seale & Thompson, of Nacogdoches, for appellant.

Russell & Edwards, of Nacogdoches, for appellee.

W. G. REEVES, Special Justice.

On April 21, 1936, Appellant upon application duly made, issued to Jesse G. Thacker its beneficiary certificate of insurance in the sum of One Thousand ($1000) Dollars naming his wife, Mrs. Fannie Flora Thacker, as beneficiary. On August 26, 1937, Appellee filed her suit in the District Court of Nacogdoches County, Texas, against Appellant, based upon said certificate; and on the 2nd day of November, 1937, the suit was tried to the Court and judgment rendered in favor of Appellee. Appellant gave notice of appeal and thereafter perfected same as required by law.

Appellee alleged that on the 21st day of April, 1936, she was the wife of Jesse G. Thacker to whom on said date the Appellant, in consideration of the payment of a certain sum of money and the further sum of Ninety Two (92¢) Cents to be paid on or before the last day of each month thereafter through his natural life, executed and delivered its policy of insurance whereby it insured Jesse G. Thacker for the sum of One Thousand ($1000) Dollars for the benefit of Appellee, and that up to the time of his death on March 16, 1937, all premiums accrued and due upon said policy were duly paid, and that insured had in all respects complied with the conditions and provisions of said policy.

The Appellant· denied such allegations, and plead that the deceased had automatically become suspended and had allowed his certificate to lapse and to become null and void under the terms of the certificate, the constitution, Laws and By-Laws of the Association, by reason of his non-payment of the regular installment premium for February, 1937, before the expiration of the last day of said month; and that he had not been legally re-instated under the terms of the certificate,·the Constitution, Laws and By-Laws of the Association, and that Appellant was not liable for any amount; and in the alternative further pleaded that because of a mis-statement by insured in his application as to his age, it could not under any condition under its Constitution, Laws and By-Laws be liable for more than $760.-33.

In reply to Appellant's answer Appellee plead a waiver of forfeiture for non-payment of premium dues or assessment for the month of February, 1937, by Appellant's accepting payment of same unconditionally after the expiration' of the month in which same should have been paid under the terms of the certificate, the Constitution, Laws and By-Laws of the Association. That T. J. Tillery, who was the Financial Secretary of Local Camp No. 2256, Shady Grove, Texas, accepted said delinquent installment as the Agent for the Appellant Association with full knowledge and notice of the condition of the health of the insured on the 8th day of March, 1937, knowing that said installment for February was then delinquent; that he had mailed same to the home office of the Association at Omaha, Nebraska; and that Appellant with full knowledge of the delinquent payment and notice of the health of insured had retained said payment until on or about July 1, 1937, which was after the date of the death of insured and after proof of loss had been made by Appellee; and that by reason of all such actions and conduct of Appellant and its agents it had waived its Constitution, Laws and By-Laws and was estopped tb deny that it was not liable under the certificate.

Appellant answering Appellee's supplemental petition denied the allegations and specially plead that if T. J. Tillery, Financial Secretary of Shady Grove Camp 2256, Woodmen of the World, accepted the delinquent February 1937 monthly installment alleged to have been paid by Jesse G. Thacker that the acceptance of same after delinquency, would not be binding upon Appellant, and that by the acceptance of said past due assessment said T. J. Tillery did not and could not under the Constitution, Laws and By-Laws of Appellant then in force waive the provisions of said laws relative to the reinstatement of members who had become suspended; and that the said insured by not paying the February assessment of 1937 before same was delinquent became suspended and his certificate null and void and of no effect; and further plead Sections 82(a) and (b), Subdivision (g) of Section 109, Section 64, Section 65, and Section 66(a) and (b), of the Constitu-

tion, Laws and By-Laws of the Association, to all of which reference is hereinafter made.

On March 30, 1936, the insured executed a written application for a beneficiary certificate of membership to the Sovereign Camp Woodmen of the World, same being made to the local camp located at Shady Grove, Texas. The application was signed by him, and, among other things, provided as follows:

"I hereby consent and agree that this application, including the foregoing answers made by me under the headings 'Personal History' and 'Family History', and all the provisions of the Constitution, Laws and By-Laws of the Association, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not."

"I agree to make all payments for which I may become liable, as required by said beneficiary certificate and by the Constitution, Laws and By-Laws of the Association, as now in force or which may be hereafter adopted, and at the time and in such manner and amount as may be provided by said beneficiary certificate and by said Constitution, Laws and By-Laws; and if I do not make said payments at the time and for the amount required and provided in said beneficiary certificate and in the Constitution, Laws and By-Laws of the Association, the certificate issued upon this application shall be null and void, and all payments made by me thereon shall be retained by the Association;"

The beneficiary certificate issued to the insured contained, among other provisions, the following:

"Important.—No Camp or officer thereof, nor any officer, employee or agent of the Sovereign Camp has authority to waive any of the conditions of this beneficiary certificate or of the Constitution, Laws and By-Laws of this Association."

"The Sovereign Camp of the Woodmen of the World, a fraternal beneficiary association incorporated under the laws of the State of Nebraska, and referred to herein as the Association, for and in consideration of the warranties contained in the application of Jesse G. Thacker for membership in the Association, and in further consideration of the payment to the Association of the sum of $.31 for the remainder of the month in which this certificate is dated by the Secretary of the Association, and the payment to it of $.92 on or before the last day of each month thereafter, issues this certificate of membership to him, as member, and agrees that The Association Will Pay upon satisfactory proof of the death of the member, while this certificate is in force, the sum of One Thousand dollars ($1000.00) to Fannie Flora Thacker, the beneficiary or beneficiaries herein, related to the member as wife,"

"This certificate is issued and accepted with the express agreement that the provisions and benefits contained on this and the three succeeding pages hereof, and in any authenticated riders attached hereto, form a part of this contract as fully as if recited over the signatures hereto affixed.

"In witness whereof, The Sovereign Camp of the Woodmen of the World at Omaha, Nebraska, has caused this certificate to be signed by its President and Secretary this 21st day of April, 1936.

"De E. Bradshaw, President.
"M. Berghahn,
"(Inspected and countersigned)
"Attest: F. Sates, Secretary.

"I have read the above certificate and accept the same, and warrant that I am now in good health and have not been sick or injured since the date of my application.

"This, the 14th day of April, 1936.
"Jesse G. Thacker.
"(Member)

"Witness: T. J. Tillery, Financial Secretary.

"Conditions

"First. This certificate is issued in consideration of the representations, warranties, and agreements made by the person named herein in his application to become a member, in the form and as passed upon and accepted by the Medical Director, and in consideration of the payment made when introduced in prescribed form; also his agreement to make all the payments that may be required of him during the time he shall remain a member of this Association.

"Second. If the admission fees, dues and rates required of the person named in this certificate are not paid to the Financial Secretary of his Camp as required by the Constitution, Laws and By-Laws of this Association, the certificate shall be null and void."

"Sixth. The payment of the monthly rate fixed for this certificate during the continuance of this certificate, including payment for the month in which the death of the member occurs, shall be in full of all regular payments required hereunder.

"This certificate is issued and accepted subject to all the conditions set forth herein and on the first, third and fourth pages hereof, and the provisions of the Constitution, Laws and By-Laws of the Association. * * * If the payments required by the Constitution, Laws and By-Laws of the Association are not paid by the member, this certificate shall be null and void. Should this certificate become void for any cause, acceptance of any payment from or for the member, or other act by any Camp officer or member of the Association thereafter, shall not operate as an estoppel or as a waiver of the terms of this contract."

By stipulation, attorneys for Appellant and Appellee agreed that the following Sections of the Constitution, Laws and By-Laws of the Appellant Association introduced in the record were a part of the Constitution, Laws and By-Laws as amended in July, 1935, effective September 1, 1935, and were in effect at the time Jesse G. Thacker was admitted to membership and at the time of his alleged suspension on the last day of February, 1937.

Section 57 of said Constitution, Laws and By-Laws of Appellant provides, among other things, as follows:

"Second. If the admission fees, dues and Sovereign Camp fund assessments levied against the person named in the certificate are not paid to the Financial Secretary of his Camp as required by the Constitution and Laws of this Association, the certificate shall be null and void, and all moneys paid on account of such membership shall be retained by the Association as the liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension."

Section 63 of said Constitution, Laws and By-Laws of Appellant Association provides:

"Sec. 63 (a) In order to accumulate and maintain funds for the payment of the benefits stipulated in the beneficiary certificates held by the members of this Association, as and when such benefits accrue, to maintain the reserves thereon and to provide for the payment of the expenses of the Association, every member of this Association shall pay to the Financial Secretary of his Camp one annual assessment in advance each year, or one monthly installment of assessment each month, as required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such Camp dues as may be required by the by-laws of his Camp.

"(b) If he fails to make any such payment on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the Association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension; except as otherwise provided in his certificate or in Sections 77 and 79.

"(c) Such person, if in good health, may thereafter make a new contract with the Association, upon the same terms and conditions, by complying strictly with the provisions of these laws."

Section 65 of such Constitution, Laws and By-Laws provides as follows:

"Sec. 65. Any person who has become suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for non-payment of assessments shall be received and retained without waiving any of the provisions of this

section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever."

Section 66 of such Constitution, Laws and By-Laws provides as follows:

"Sec. 66. (a) The retention by the Association of any installment of assessment paid by or for any person after he has become suspended in order to again make him a member, shall not constitute a waiver of any of the provisions of this Constitution, Laws and By-Laws, or an estoppel upon the Association.

"(b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good· health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment of assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void."

Section 82 of such Constitution, Laws and By-Laws provides as follows:

"Sec. 82. (a) No officer, employee or agent of the Sovereign Camp, or of any Camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this Constitution or these Laws, nor shall any custom on the part of any Camp or any number of Camps—with or without the knowledge of any officer of the Association—have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the Constitution and Laws, then in force or thereafter enacted, nor shall the knowledge or act of any officer or employee of this Association constitute a waiver of the provisions of these laws by the Association or an estoppel of this Association.

"(b) The Constitution and Laws of the Association now in force, or which may hereafter be enacted, the application and beneficiary certificate of membership shall constitute the contract between this Association and the member."

Section 109 (g) of the Constitution, Laws and By-Laws of Appellant Association provides:

"The Financial Secretary shall not by acts, representations or waivers, nor shall the Camp by vote or otherwise, or any of its officers, have any power or authority to waive any of the provisions of the Constitution, Laws and By-Laws of this Association nor to bind the Sovereign Camp by any such acts."

The local Financial Secretary's official receipt dated March 8, 1937, was introduced in evidence, and provided as follows:

"Sovereign Camp     Financial Secretary's
Woodmen of the World     Official Receipt

Date March 8, 1937.    No. 123

Received of     J. G. Thacker

| | Dollars | Cents |
|---|---|---|
| For Sov. Camp Fund Annual Ass't From — to | | — |
| Or Sov. Camp Fund Monthly Installment No. 2 | | 92 |
| Monthly Camp Dues, Feb. | | 15 |
| Specials | | |
| Total | 1 | 07 |

T. J. Tillery, Financial Secretary
Shady Grove Camp No. 2256, State Texas.

"If any part of the above amount is paid for the purpose of again becoming a member after the membership of the person named above had been terminated by suspension, it is received upon the condition and agreement that said sum so paid on account of said person shall not restore him to membership except as provided by the Constitution, Laws and By-Laws of the Sovereign Camp of the Woodmen of the World, nor unless said person has complied with the provisions of said Constitution, Laws and By-Laws with respect to again becoming a member.".

At the request of Appellant the trial court filed·its findings of fact and conclusions of law. The pertinent facts as found by the Court were as follows:.

That on or about April 21, 1936, the Appellant issued to Jesse G. Thacker its certificate of insurance in the sum of $1000 payable to his wife, Appellee herein; that on or about the 16th day of March, 1937, the insured died; that up to the time of his death all premiums had been regularly paid, except the regular February 1937 monthly installment which was due on or before the last day of February, 1937; that said February installment was paid.

to T. J. Tillery on March 8, 1937; that T. J. Tillery was the Financial Secretary of Local Camp No. 2256, Shady Grove, Texas, and of which Camp Jesse G. Thacker was a member; that T. J. Tillery accepted the February 1937 delinquent monthly premium from Jesse G. Thacker's wife on the 8th day of March, A. D. 1937, with actual knowledge of the condition of the health of Jesse G. Thacker; that after T. J. Tillery accepted the February 1937 delinquent premium he mailed same to the home office of the Appellant at Omaha, Nebraska, and it was there received on the 16th day of March, 1937; that on the 5th day of March, 1937 T. J. Tillery reported to the home office of the Appellant that Jesse G. Thacker was delinquent in the payment of his February 1937 premium, which report was received at the home office of Appellant prior to March 16, 1937; that the February 1937 delinquent premium was received and accepted at the home office of Appellant on the 16th day of March 1937, and retained there until the 1st day of July, 1937; that after Appellant at its home office had received due proof of the death of Jesse G. Thacker, and demand of payment of the death claim on the certificate of insurance, the Appellant then and at which time, July 1, 1937, refused payment of the death claim and returned ninety two (92¢) cents by its Check to Appellee, claiming and saying at that time that the said Jesse G. Thacker was not a member in good standing and in good health at the time of his death; the check was not cashed by Appellee; that at the time and date the February 1937 delinquent payment was paid to T. J. Tillery by Mrs. Thacker it was paid at the Hospital where Mr. Thacker was sick and while Mr. Tillery was standing in the room where Mr. Thacker was then on the bed and at the very time and place, Mr. Tillery said "that will be alright"; that $350 was reasonable attorney's fee for representing Appellee; that the provisions of the Appellant's Constitution, Laws and By-Laws as pleaded and offered in evidence are true.

The conclusions of law as found by the trial court were as follows:

## "Conclusions of Law

"The court finds as a matter of law, based on the above facts, actions and conducts of the defendant and its agents, that it waived the provisions of its constitution, laws and by-laws in accepting and retaining the February, 1937 delinquent premium pay-ment, and that it was estopped to deny liability in accordance with its certificate of insurance issued to Jesse G. Thacker.

"The court further finds as a matter of law, under the facts and pleadings of the plaintiff, that plaintiff is entitled to recover of and from the defendant, the sum of $325.00, as a reasonable attorney's fee, together with twelve per cent of the amount of the insurance as a penalty."

It is undisputed that, at the time the February 1937 delinquent payment was made on March 8, 1937, by Appellee in an effort to reinstate the insured, Mr. Thacker was then in the hospital suffering with an illness from which he died eight days later. There is no evidence disclosed by the Record in this case that the Association had any actual knowledge that insured was ill at the time payment of' the delinquent installment was made to T. J. Tillery, the Financial Secretary of Shady Grove Camp, of which the deceased was a member; nor that the Association had any actual knowledge of insured's illness when the installment was received by it at its office on March 16, 1937. The Association on March 16th had received the reports made on March 5th and March 10th by T. J. Tillery, Financial Secretary of the local Camp at Shady Grove, Texas, showing that Mr. Thacker was suspended.

On March 29, 1937, when the home office was notified of the death of the insured, there is no evidence that it then knew the insured was ill when the delinquent payment was made. It forwarded forms for proof of death which were received by the Association from Appellee on May 13, 1937, which, so far as the Record shows, conveyed to the Association its first actual knowledge that the insured was ill and in the hospital and attended by a physician on March 8, 1937, the date on which the February delinquent payment was made to T. J. Tillery, Financial Secretary of the local Camp at Shady Grove, Texas, and which illness continued until the death of the insured eight days later. On completing the investigation, the claim department of the association on July 1st, 1937, rejected the claim, denied liability and sent check to Appellee for the February installment of 92¢.

It being stipulated by the parties to this suit that Appellant "is a fraternal benefit society, with a lodge system, as ritualistic form of work, and a representative form of government without capital stock and trans-

acting its business without profit and for the sole benefit of its members and their beneficiaries", Article 4846 of Vernon's Revised Civil Statutes of 1925 is applicable and provides, among other things, that "the Constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any provision of the laws and Constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

The beneficiary certificate issued to insured provided, among other things, that same was issued and accepted subject to all the conditions thereof and subject to the provisions of the Constitution, Laws and By-Laws of the Association, and further provided that the certificate, the articles of incorporation, the Constitution, Laws and By-Laws of the Association should constitute the agreement between the Association and the member.

The insured automatically became suspended and the certificate void by virtue of his not paying the February 1937 installment or assessment within the time as provided in the certificate, Constitution, Laws and By-Laws of the Association; but if in *good health* the suspended member had the right to and could have within three months from the date of his suspension again become a member of the Association under the conditions set forth in Section 65, of the Constitution and By-Laws of the Association, above quoted.

The case of Sovereign Camp, Woodmen of the World, v. Moraida, reported in 113 S.W.2d 177, decided by the Commission of Appeals February 16, 1938, and which opinion was adopted by the Supreme Court, was one in which the sole question of law involved was the same as here involved, and the facts are very similar to the facts in this case and we're even more favorable to the insured than the facts in the instant case. We believe the holding of the Supreme Court in the Moraida Case should control the Court in rendering its opinion in this case.

In the Moraida Case the Financial Secretary of the local Camp had been receiving the payments from the insured not before the last day of the month in which they were due, but during the next month after their accrual. This had continued for 18 payments, including the December payment of 1932 which was received by Gonzales, the Financial Secretary of the local Camp, on January 7, 1933, and the January payment of 1933 which was received by the Financial Secretary of the local Camp on February 4, 1933. Moraida, the insured, became ill about December 25, 1932, which illness continued until the date of his death on February 16, 1933. These assessments were paid to Gonzales, the Financial Secretary of the local Camp, who knew of the insured's illness when he accepted the past due payments in January and February and told Moraida he would be in good standing if he paid his assessments before he (Gonzales) sent his report to the Association. In the case now before the Court the insured had not at any other time been delinquent in his payment. In the Moraida Case the Court of Civil Appeals, 85 S.W.2d 364, set out in its opinion the provisions of the Constitution, Laws and By-Laws of the Association, hereinabove set out by us. The Commission of Appeals in its opinion referred specifically to Sections 109, 66, and 65 of the Constitution, Laws and By-Laws of the association, as being particularly pertinent to a decision of the Moraida Case, and for the sake of economy in space we will not again quote these Sections.

Mrs. Moraida contended that since the Financial Secretary of the Local Camp received and sent the installments of local dues for the months of December and January to the Association, which received and retained same without protest until it received information of Moraida's death, that the Association thereby waived and became estopped to urge as a defense against liability the provisions of the Constitution, Laws and By-Laws of the Association, hereinbefore set out; and further, that the practice and custom of the local camp in so receiving and forwarding to the Association the past due payments led the insured to believe that prompt payment according to the provisions adopted by the Association would not be required, and that such practice and custom amounted to the making of a new contract between the parties. The Court of Civil Appeals in affirming the judgment of the trial court in effect so held. In the case now before the Court, so far as the Record discloses, the insured had never before become delinquent in making his payments, and no such custom is shown as in the Moraida Case.

The Commission of Appeals in discussing the judgment of the Court of Civil Appeals in the Moraida Case said (page 180), "the principal ground for [the holding of the Court of Civil Appeals] is to the effect that knowledge of the financial secretary of the local camp acquired while engaged in the discharge of his official duties as collector for the camp is as a matter of law imputed to the association." The Commission of Appeals further said: "The holding is in our opinion erroneous, in that its effect is to nullify the provisions of the constitution, laws, and by-laws of the association obviously adopted by the association and agreed to by its membership for the purpose of guarding against such claims as that asserted in the present case. One of the specific purposes for which they were adopted is to. prevent the restoring to membership of a suspended person in ill health when such fact is unknown to the association, and to prevent reinstating him in a manner prohibited by the laws of the association governing membership and its privileges. Finally, the effect of the holding is to nullify and render of no avail the power conferred by the Legislature by article 4846 authorizing the association to provide that neither the subordinate body nor any of its subordinate officers or members shall have the power to waive any of the provisions of its laws, and authorizing it to specifically require that such provisions 'shall be binding on the society and each and every member thereof and on all beneficiaries of members.' The Legislature was not without power to grant to fraternal benefit societies the authority conferred by article 4846, and the exercise of such power cannot lawfully be thwarted by judicial decree in the light of the facts herein, stipulated by the parties. Sovereign Camp, Woodmen of the World, v. Cameron, Tex. Civ.App., 41 S.W.2d 283, writ refused. Clearly neither the financial secretary of the local camp nor the camp itself could by their knowledge or acts do that which both were without power to do and which the deceased member had agreed they were without power to do."

Modern Woodmen of America v. Harper, 127 Tex. 489, 94 S.W.2d 156, and Sovereign Camp, Woodmen of the World, v. Sunday, Tex.Civ.App., 103 S.W.2d 484, the opinion in the latter case being based on the authority of the former, are readily distinguishable from the instant case on the facts. Sovereign Camp, Woodmen of the World, v. Sunday was decided by the Court of Civil Appeals and a writ of error refused. The proof on that case showed that for twenty months before his death Sunday was not in good health, yet on twelve different occasions during that period he had made payment of his dues after an ipso facto forfeiture had taken place. During all that time the local clerk at Yoakum knew of the condition of his health and made the collections knowing that he was in poor health. In its opinion the Court said (page 487): "We find no proof that appellant knew, before the trial of this case, of the practice of the local secretary and members of the Yoakum Camp whereby payments due in one month, if made in the succeeding month before the report was sent off, were treated as having been duly made. * * * We agree with appellant that the facts of the present case prevent it being brought within the authority of the Bailey Case [Bailey v. Sovereign Camp, 116 Tex. 160, 286 S.W. 456, 288 S.W. 115, 47 A.L.R. 876]. For there, the delinquent member had no absolute right to make payment of a past-due assessment, and the financial secretary of the local camp had the right to refuse to accept such payment. Also at that time the authority of the financial secretary of the local camp had not been so reduced that he was incapacitated by his act as mere secretary to do any act to waive the good health warranty, or by his knowledge to impute knowledge to the Sovereign Camp. Indeed, the difference between the constitution, laws, and by-laws as they existed at the time the Bailey Case was tried, and when the instant case arose, argues most strongly that the changes were made to get around the Bailey Case."

The Court further said in its opinion: "We concede that the knowledge of the local clerk under the facts of this case, and under the laws of the association, as to these forfeitures, was not imputed to the association. But it is perfectly clear that for all purposes connected with the trial of this cause, appellant's representatives present in court during the trial of this cause in the district court were the alter ego of the association. The association through its representatives at the trial of this case learned the truth about the practice followed by the local clerk at Yoakum, and then, with actual knowledge of the facts about the practice of the local clerk in this case, and of his collection of these past-due assessments when deceas-

ed was in bad health, and having this actual knowledge, by then retaining the sums so collected, with the single exception of the payment made on the Sunday account on December 26, 1933, and having failed to tender back to appellee these past-due payments collected from Sunday while in bad health, after having received full knowledge of the facts on the trial, it then and there waived the forfeiture."

The facts upon which the opinions are based in the cases of Sovereign Camp, Woodmen of the World, v. Cameron, Tex. Civ.App., 41 S.W.2d 283, and Sovereign Camp, Woodmen of the World, v. Carroll, Tex.Com.App., 110 S.W.2d 556, are almost identical with the facts in the instant case. We believe those decisions and the decisions in the Moraida Case, which quotes and relies upon them as authority, are controlling in this case.

The judgment of the trial court is reversed, set aside, and judgment is here rendered for Appellant.

COMBS, J., and I. W. LAWHON, Special C. J., concur.

WALKER, C. J., and O'QUINN, J., were disqualified.