SOVEREIGN CAMP, WOODMEN OF THE WORLD, V.
MARGARET J. SHUFORD.

No. 7137. Decided February 8, 1939.
(124 S. W., 2d Series, 341.)

*Lawrence R. Brooks,* of Rio Grande City, and *J. T. Canales,* of Brownsville, for plaintiff in error.

It was error for the Court of Civil Appeals to find as a matter of law that the filing of a motion for judgment non obstante verdicto has the effect of waiving the matters complained of in a motion for new trial and admitting there was sufficient evidence to support the findings of the jury on the special issues submitted. Bacle v. Pickens, 78 S. W. (2d) 260; Ackerson v. Farm & Home Saving Loan Assn., 77 S. W. (2d) 559; Kimbrow v. Fort Worth & D. C. Ry. Co., 86 S. W. (2d) 78.

Plaintiff, having a copy of the by laws which forbid a representative of the association from making condition different from those set forth in the certificate, could not claim estoppel against the association from denying liability. Bennett v. Sovereign Camp, 168 S. W. 1023; McCurry v. Praetorians, 90 S. W. (2d) 853; Praetorians v. Strickland, 66 S. W. (2d) 686.

*Pope & Pope,* of Laredo, for defendant in error.

The insured having been misled to his detriment by officials and agents of the fraternal benefit society, after having made every reasonable effort to comply with his duties to retain his full membership, the said society is estopped from asserting a forfeiture or a loss of his rights. American Surety Co. v. Whitehead, 45 S. W. (2d) 958; Universal Transport Co. v. Ramos, 37 S. W. (2d) 238; Blackwell v. Vaughn, 176 S. W. 912.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The record in this case in part is succinctly stated in the following excerpt from the opinion of the Court of Civil Appeals.

" * * * The insured on August 15, 1919, made application to the appellant order for a benificiary certificate in the sum of $2,000, agreeing in the application that all of the provisions of the appellant's constitution and by-laws then in force or thereafter adopted should constitute the basis for and form a part of the benefit certificate, and agreed to pay all dues and assessments made while a member, and that upon suspension for noncompliance he and his beneficiary would forfeit all rights under the certificate. Pursuant to said application the certificate, on August 31, 1899, was issued to him in the sum of $2,000 plus $100 for a tombstone to be erected over his grave, the certificate containing substantially the same conditions as the application.

"Omitting the amendments to the constitution and by-laws previous to the date of the certificate, the record shows that after December 31, 1919, under the provisions of the constitution and by-laws and the 'Plan of the Apportionment and Readjustment,' the insured was required to pay an annual assessment rate of $108.82 each year, or a monthly installment of $9.43 each month, in addition to local camp dues; in order to maintain his benefiary certificate in favor after that date for the full amount of the death, monument, and old age disability benefits previously provided. The insured did not pay this increased rate, and thereby elected the charging of an interest-bearing lien against his certificate in the sum of $440 and the cancellation of the monument and old age disability benefits previously provided. The lien above referred to bore interest which the member might pay at 4 per cent. per annum, either in annual or monthly payments. The insured, after December 31, 1919, and to and including the month of January, 1932, paid the 1917 rate of $2.52 per month, plus the monthly interest of $1.47 on the lien, or a total of $3.99 per month, in addition to local camp dues.

"The record shows no remittance at the home office to pay the February, 1932, or any subsequent monthly installment on the certificate, or any payment of interest on the lien subsequent to the payment for January, 1932.

"The record shows the insured was suspended for failure to pay the February, 1932, and subsequent monthly installments due on his certificate."

The record also shows that the holder of the certificate died August 18, 1933, fourteen months later without having been reinstated.

Judgment was rendered by the trial court and affirmed by the Court of Civil Appeals, in favor of the beneficiary, Mar-

garet J. Shuford, defendant in error here, for $1622.91, being the face amount of the certificate and penalty added, less the amount of a lien and interest outstanding against the certificate. 93 S. W. (2d) 794. Writ of error was granted upon application of the society.

The affirmance of the judgment by the Court of Civil Appeals was not predicated upon a direct holding that there was sufficient evidence to sustain the findings of the jury, but rather upon its orginial interpretation of the record as disclosing that the society omitted to file, prior to filing its motion non obstante veredicto, a motion to set aside "the verdict of the jury or the entry of judgment based thereon," the opinion stating that the society, by such omission, " admitted there was sufficient evidence upon which the verdict could be based." Upon this understanding of the record it was held that the findings of the jury "in so far as they were material, became binding and conclusive upon the parties." In the opinion on rehearing the original opinion was corrected so as to show that the society not only filed a motion for an instructed verdict, which was overruled, but also, upon return of the jury's verdict on the issues, filed a motion for judgment notwithstanding the verdict, which was likewise overruled. The Court of Civil Appeals overruled the society's motion for rehearing, notwithstanding the correction made, with the statement that it would serve no useful purpose to again discuss the issue; and the affirmance of the judgment entered by the trial court upon the findings in question was permitted to stand.

The materiality of the issues rather than the sufficiency of the evidence to support the findings thereon, is the vital question presented for determination.

It was the theory of the beneficiary as indicated by her pleadings and the evidence which she introduced that if she could establish that the insured was in a permanently disabled condition at the time he arrived at seventy years of age, (the insured at that time not having been suspended for nonpayment of dues) she would have established thereby her right upon the death of the insured to recover damages against the society measured by the terms of the contract between the insured and the society with respect to the old age benefit in question; provided she could also establish that an agent of the society soon after the 1919 amendment to the constitution, laws and by-laws became effective, represented to the insured that he could continue paying the old rate of assessment and be entitled to receive the old age benefit after attaining the

age of seventy years, if then in a disabled condition, and that the difference between the old rate and the new would be charged against his certificate as a lien; and further establish that the insured was misled to his damage by such representation.

■ The insured at the time of the adoption of the 1919 amendment whereby it reconstructed its rates, was fifty-nine years of age. W. W. Shuford, his son, testified that about 1919 or 1920 some man whom he did not know, but who stated he was an agent of the society, represented to the insured in his presence that the benefits under his certificate would be the same if he continued paying the old rate as they then were, and that the difference between the old rates and the new would be charged against the certificate upon maturity of the old age benefit; that after discussing the matter of the rates and his father's health, "we decided we would stay with the old rate." Mrs. Shuford, the beneficiary, testified that the insured in her presence asked W. W. Sloan, secretary of the local camp, about September, 1931, before the certificate was allowed to lapse the following February, what "they meant to do about the old age pension," and that Mr. Sloan replied that he really did not know but thought "maybe us old men will have to pay clear on"; that he asked Mr. Sloan if he would investigate the matter for him, and that Mr. Sloan stated he would do his best. Such was substantially the testimony upon which the findings were predicated and upon which judgment was awarded the beneficiary.

Regardless of whether the testimony was admissible, and assuming the conclusiveness of the findings based thereon, they could work no estoppel against the society to show that it was not liable to the beneficiary either in damages or upon the insurance contract. Wirtz v. Sovereign Camp W. O. W., 114 Texas 471, 268 S. W. 438; Sovereign Camp W. O. W. v. Cousins, 26 S. W. (2d) 453; affirmed by Sup. Ct., 120 Texas 107, 35 S. W. (2d) 696, appeal dismissed by the U. S. Sup. Ct., 284 U. S. 595, 52 Sup. Ct. 203, 76 L. Ed. 512; Bennett v. Sovereign Camp W. O. W., 168 S. W. 1023; Bailey v. Sovereign Camp W. O. W., 116 Texas, 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876; Sovereign Camp W. O. W. v. Cameron (writ ref.) 41 S. W. (2d) 283; Sovereign Camp W. O. W. v. Moraida (Com. App.), 113 S. W. (2d) 177. The case of Sovereign Camp W. O. W. v. Cayton, 74 S. W. (2d) 158, apparently relied upon by the beneficiary, is not in point. The insured in that case paid the increased rates until he was past seventy years of age, and at the time his certificate was cancelled the society

owed him under its disability provisions a sum in excess of the accrued premiums.

■ The society is what is recognized by the statutes of this State as a fraternal benefit society. Chap. 8, Title 78, R. C. S. 1925. It has a lodge system, a ritualistic form of work and a representative form of government. Its secretary, who has held that position since the organization of the society under the laws of Nebraska in 1891, states in his testimony that it has no capital stock and transacts business without profit and for the benefit of its members and their beneficiaries; that it is governed by a constitution, laws and by-laws enacted by its supreme representative government and legislative body, which is known as the Sovereign Camp; that this body is composed of the representatives of the members and of its officers, the former at all times constituting a majority in number and having not less than two-thirds of the votes, and not less than the number of votes required to amend its constitution, laws and by-laws. He further states that it is an entity organized and incorporated by the members, and is a channel into which members make their contributions and through which the contributions are paid the beneficiaries of deceased members; that it is wholly in the hands of the membership and is operated by the members; that one of its objects is to create a fund from which, on reasonable and satisfactory proof of death of a beneficiary member who has complied with all the requirements of the society, there shall be paid the sum provided for by the terms of the contract to the beneficiary or beneficiaries under his beneficiary certificate. In other words the insured, under the society's plan of insurance operation, is also, in part at least, the insurer, as is pointed out in Fowler et al v. Sovereign Camp, W. O. W., 106 Neb. 192, 183 N. W. 550, the case in which the Supreme Court of the state of the society's domicile held the new rates adopted in 1919 were valid.

Section 82 (a) of the constitution, laws, and by-laws adopted in 1919, effective December 31st of that year, reads:

"No officer, employee or agent of the Sovereign Camp, or of any Camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this Constitution or these laws, nor shall any custom on the part of any Camp or any number of Camps—with or without the knowledge of any Sovereign officer—have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the

conditions stated in and subject to the Constitution and Laws, then in force or thereafter enacted."

When the insured became a member of the society he did so upon an express agreement that the provisions of its constitution, laws, and by-laws then in force *or thereafter adopted* should constitute the basis for his certificate and the benefits to be received under the terms of his insurance contract.

In the present case, as stated in the opinion of the Court of Civil Appeals, "the insured did not pay this increased rate" (after the 1919 amendment of the constitution and by-laws), "but continued for thirteen years to pay the old rates"; and as further stated in the opinion, the insured "thereby elected the charging of an interest-bearing lien against his certificate in the sum of $440.00, and the cancellation of the monument and old age disability benefits previously provided." The insured for about thirteen years after the *new rate* became effective (under which it was necessary that he pay an assessment of $108.82 each year, in addition to the local camp dues, in order to keep in force the full amount of the death, monument and old age disability benefits previously provided) continued to pay the *old rate,* with the result stated. Had he been able to continue his payments for fourteen months longer, his beneficiary upon his death would have been entitled to receive the amount of the face of the certificate and the accumulation, if any, less the amount of the lien and accumulated interest thereon; but under the undisputed facts there was no basis for awarding the beneficiary the damages for which she sued.

■ The trial court erred in not sustaining the society's motion for an instructed verdict in its favor; and having failed to sustain it, erred in not granting its motion for judgment notwithstanding the verdict. Art. 2211, R. C. S. 7 Vernon's Tex. Civ. St.; James v. Texas Employers Ins. Co., 98 S. W. (2d) 425. The law applicable here with respect to the duty of the trial court to grant a motion for judgment non obstante is clearly stated in the cited case as follows:

"Article 2211, as amended by the Acts of the Legislature 1931, c. 77, par. 1 (Vernon's Ann. Civ. St. art. 2211), expressly provides that 'upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence.' We think it is apparent from the language of the article, as amended, the Legislature intended that if the court, after

submitting the cause to the jury upon special issues, concluded that he had erred in not instructing a verdict he might, after the jury had answered the issues submitted obtain the same result as would have been obtained by an instructed verdict by rendering a judgment for the party for whom he should have in the first instance instructed a verdict. We understand that the courts have so construed said statute. Waitz v. Uvalde Rock Asphalt Co. (Tex. Civ. App.) 58 S. W. (2d) 884; Spence v. National Life & Acc. Ins. Co. (Tex. Civ. App.) 59 S. W. (2d) 212; Simmonds v. St. Louis, B. & M. Ry. Co. 127 Texas 23, 91 S. W. (2d) 332; 25 Tex. Jur. par. 114, p. 501.

"The second contention of the appellant is that a motion must be made to set aside the verdict and favorable action had on the motion, thus disposing of the verdict, before the entry of the judgment. We do not so understand the statute. The only motion that is required is a motion for judgment notwithstanding the verdict. As heretofore stated, the evident purpose of the act was to simplify that procedure by permitting the trial court to disregard the jury finding not supported by the evidence, and to render judgment for the party for whom he should have instructed a verdict in the first instance."

The foregoing statement of the law is unaffected by the fact that the judgment of the Court of Civil Appeals was reversed upon an unrelated point. 131 Texas 605, 118 S. W. (2d) 293.

The Court of Civil Appeals erred in the present case in affirming the trial court's judgment. Both judgments are set aside and judgment is here rendered for plaintiff in error.

Opinion adopted by the Supreme Court February 8, 1939.

Chief Justice Cureton not sitting.