# W. O. W. Life Insurance Society v. A. C. Sosebee et al.

No. 7833. Decided April 1, 1942.
Rehearing overruled May 13, 1942.
(161 S. W., 2d Series, 779.)

*Thomas & Thomas*, of Anson, *E. M. Overshiner*, of Abilene, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the clerk of the local camp as agent of the insurer was authorized to collect the dues of the insured, under his insurance contract. Great Natl. Life Ins. Co. v. Gafford, 108 S. W., (2d) 917; Order of the Easter Star v. Perdue, 120 S. W. (2d) 466; McCorkle v. Texas Benevolent Assn., 8 S. W. 516.

*Smith & Smith*, of Anson, and *E. M. Critz*, of Coleman, for defendants in error.

On the proposition that the clerk of the local camp, in collecting the premiums of the insured by drawing a draft on his bank account each month, was the agent of the insurer. Modern Woodmen of America v. Harper, 94 S. W. (2d) 156; Bailey v. Sovereign Camp, W. O. W., 116 Texas 160, 286 S. W. 456, 288 S. W. 115.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

On October 16, 1913, the defendant Woodmen of the World Life Insurance Society insured the life of Homer V. Sosebee, who died January 3, 1938. His eight surviving brothers sued to recover on the policy as his sole surviving next of kin. A jury verdict on special issues resulted in a trial court judgment for the plaintiffs, which was affirmed by the Court of Civil Appeals at El Paso, after remittitur by plaintiffs of a 12 per cent. penalty and attorney's fees allowed by the trial court. 144 S. W. (2d) 308.

In 1917 Homer V. Sosebee was committed to an insane asylum, where he remained until his death. The defendant knew nothing about his mental condition until January 18, 1932, when its grand secretary, at Omaha, Nebraska, received a letter from its local secretary, at Paducah, Texas, inquiring whether any benefits for permanent total disability were payable under the policy. All premiums due on the policy were timely paid up to March, 1932. In 1928, plaintiff Marvin Sosebee began paying the premiums by check mailed to V. A. Eblen, defendant's local clerk at Paducah. Later he began paying several premiums at a time. For example, in September, 1929, he mailed a check to Eblen to cover August, September, October, November and December, which was received by Eblen on the 15th of September. On other later occasions he mailed a check to pay premiums for more than one month. However, defend-

ant's home office record did not show that any premium had been so paid subsequent to the month for which it was due, Eblen's reports all showing each premium remitted during the month for which it accrued.

Early in January, 1932, Marvin Sosebee mailed a check to Eblen for January and February dues and inclosed a letter requesting Eblen to draft on him through the bank at Anson for subsequent months. To this request Eblen replied, "I'll be very glad to draw on you and the bank said would be O. K. thank you very much." However, Eblen failed the very first month to forward the draft as promised, which fact first became known to Sosebee through a letter he received from Eblen of date April 26, 1932, stating that Homer Sosebee had gone suspended as of March 1 but that he (Eblen) could reinstate the insured if payments were received by May 1. Sosebee immediately sent Eblen a check dated April 28, 1932, for the two months dues. Eblen by letter mailed May 6, sent Sosebee a receipt dated May 1, for dues for March and April. These were remitted by Eblen to the defendant, at Omaha, but were by it immediately returned to Eblen with a notation that Homer Sosebee was shown on its records as suspended and that he was not eligible for reinstatement because of his hospital confinement. Eblen then forwarded to Sosebee defendant's refunding checks covering the dues so refused.

The defense was that the policy lapsed on April 1, 1932, for nonpayment during March, 1932, of the premium due for said month. To meet this the plaintiffs alleged (1) that Eblen's failure to draw the drafts as agreed and his acceptance of the check on May 1 constituted a waiver by defendant of its right to forfeit the insurance contract for failure to pay the March premium during March; and (2) that it was estopped to forfeit the same.

The jury found that (1) in January, 1932, plaintiff Marvin Sosebee requested defendant's clerk at Paducah to draw on him through the bank at Anson for Homer V. Sosebee's dues for March, 1932, and subsequent months; (2) that said clerk agreed to do so; (3) that Marvin Sosebee relied on said agreement; (4) that such drafts would have been paid; and (5) that the clerk's agreement to draw in such manner was the cause of the March, 1932, premium not being paid during said month of March.

Homer Sosebee's application for the policy in question bound him "to pay all assessments and dues for which I may become liable while a member of the Order, as required by its Constitution and Laws." The constitution, laws and by-laws of defendant required him to pay to the financial secretary of his camp one annual assessment each year or one monthly assessment each month, and provided, "If he fails to make any such payments on or before the last day of the month he shall thereby become suspended, his Beneficiary Certificate shall be void, the contract between such person and the Association shall thereby completely terminate and all moneys paid on account of such membership shall be retained by the Association." They further provided that no officer, employee or agent of any camp of defendant's had the power, right or authority to waive any of the conditions upon which benefit certificates are issued or to change, vary or waive any of the provisions of its constitution and by-laws. Section 109-G was to this effect:

"The Financial Secretary shall not by acts, representations or waivers, nor shall the camp by vote or otherwise, or any of its officers, have any power or authority to waive any of the provisions of the Constitution, Laws and By-Laws of this Association nor to bind the Sovereign Camp by any such acts."

▇▇ The defendant is a fraternal benefit society as defined by Chap. 8, Title 78, R. S. 1925, and by the provisions of Art. 4846, ibid., it is expressly empowered to make provisions such as those above stated. This statute has been held valid. By-law provisions enacted pursuant thereto have been sustained as a part of the contract of insurance entered into between insurer and insured when the policy is delivered. 6 Tex. Jur., sec. 54, and authorities there cited. In fact, Art. 4834, R. S. 1925, clearly so provides. We think the quoted provisions, which were a part of the contract between the defendant and Homer V. Sosebee, prohibited Eblen from attempting to avoid forfeiture of Sosebee's policy by accepting the March premium in April.

The only question left for decision is whether there is anything in the record that would constitute a waiver by defendant or that would estop it to assert a forfeiture of the policy. We think this has been definitely decided contrary to plaintiffs' contention. In Sovereign Camp, W. O. W. v. Thacker (Civ. App.), 118 S. W. (2d) 1086 (er. ref.), the court was construing the identical provisions of the constitution, laws and by-laws of defendant that are now before us. Thacker died March 16,

1937, after the February premium on his policy had been paid by his wife on March 8 to defendant's local clerk. On March 5 the clerk had reported Thacker delinquent but mailed the premium in when it was paid and the same was retained by defendant until July 1, 1937, when it returned the same along with its rejection of a death claim on the Thacker certificate. Thacker was in his last illness when the February premium was paid, which fact was known to the clerk but not to defendant until it investigated the death claim. The trial court held that the defendant by its own conduct and that of its clerk had waived the applicable provisions of its constitution and by-laws and by accepting and retaining the premium estopped itself to deny liability on the policy. The Court of Civil Appeals held there was neither waiver nor estoppel and rendered the judgment for the defendant. Aside from the alleged agreement between plaintiff Marvin Sosebee and Eblen, the case at bar differ from the Thacker case only in that here the defendant knew that Sosebee was insane and promptly returned the March and April premiums.

In Sovereign Camp, W. O. W. v. Moraida, 131 Texas 250, 113 S. W. (2d) 177, in spite of the above-quoted by-laws the defendant's local clerk collected from the insured eighteen consecutive monthly payments during the month following that for which each was due. The last two were received by the clerk with knowledge that the insured was then in the sickness from which he died. Neither the defendant nor its general officers had any actual knowledge either as to the belated payment of the last two installments or that Moraida was sick when they were paid. In overruling the decision of the Court of Civil Appeals that retention by defendant of the last two premiums constituted a waiver and estopped it to urge the by-law provisions against liability on the policy, Judge Taylor said:

"The holding is in our opinion erroneous in that its effect is to nullify the provisions of the constitution, laws and by-laws of the association obviously adopted by the association and agreed to by its membership for the purpose of guarding against such claims as that asserted in the present case. * * Finally, the effect of the holding is to nullify and render of no avail the power conferred by the Legislature by Article 4846 authoriizing the association to provide that neither the subordinate body nor any of its subordinate officers or members shall have the power to waive any of the provisions of its law. * * Clearly neithei the financial secretary of the local camp nor the camp

itself could by their knowledge or acts do that which both were without power to do and which the deceased member had agreed they were without power to do." Sovereign Camp W. O. W. v. Shuford, 132 Texas 376, 124 S. W. (2d) 341; Sovereign Camp W. O. W. v. Oliva (Civ. App.), 126 S. W. (2d) 101 (er. ref.) ; and Sovereign Camp, W. O. W. v. Carroll, 131 Texas 1, 110 S. W. (2d) 556, are other cases in point.

■ We are not impressed with the proposition that since Eblen was charged with the duty to receive and collect money for the defendant, he was under the duty to draw drafts and was, therefore, within the scope of his agency for defendant in agreeing to do so in order to effect the collection of premiums, thus charging the defendant with any negligence of his in that regard. It was the insured's obligation to pay the premiums monthly within the month for which the same accrued. Eblen's office was to receive and remit such payments, which is a more limited and restricted function than authority to collect. Ryan v. Tudor et al 31 Kan. 366, 2 Pac. 797. When Eblen and Sosebee made the arrangement whereby it was sought to make payment easier for Sosebee but more onerous for Eblen, Eblen in that respect became Sosebee's agent and his negligence is to be charged to Sosebee, not to the defendant, who had no part in the agreement. Eblen, to that extent, had departed from the scope of his employment. Consequently, neither his agreement nor his negligence in performing the same can be imputed to the defendant. See Sovereign Camp, W. O. W. v. Cameron (Civ. App.), 41 S. W. (2d), 283 (er. ref.). The trial court should have instructed the verdict for the defendant.

Therefore, the judgment of both courts below is reversed and the same is now rendered for petitioner, Woodmen of the World Life Insurance Society.

Opinion adopted by the Supreme Court April 1, 1942.

Rehearing overruled May 13, 1942.